## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**ROY C. BARNHILL,**

  **Petitioner,**

**v.**          **Case No.  3:17cv693-MCR/CAS**

**JULIE L. JONES, Secretary,**
**Department of Corrections,**

  **Respondent.**
_____/

### REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On September 15, 2017, Petitioner, Roy C. Barnhill, a prisoner in the custody of the Florida Department of Corrections, proceeding pro se under the mailbox rule, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Counsel for Petitioner subsequently filed a notice of appearance.  ECF No. 8.  With leave of court, Petitioner filed a counseled memorandum in support of the petition on July 16, 2017.  ECF No. 17.  Respondent filed an answer on August 19, 2018, with exhibits. ECF No. 22, Exhibits 1 through 28.  Petitioner filed a reply on October 17, 2018.  ECF No. 25.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by Indictment filed October 20, 2008, in Santa Rosa County, Florida, with the September 24, 2008, first-degree premeditated murder of Roy C. Barnhill, Sr., Petitioner's father, by shooting him with a handgun carried by Petitioner. Ex. 1 at 19-20.[1] Jury trial was held beginning June 9, 2010. Exs. 10-12. On June 18, 2010, the jury returned a verdict finding Petitioner guilty as charged, with the separate finding that Petitioner carried and discharged a firearm and that as a result of the discharge, death was inflicted upon Roy Carlton Barnhill, Sr. Ex. 12 at 2424. Petitioner was orally adjudicated guilty and immediately

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to Exhibits 1 through 28 submitted in conjunction with Respondent's answer. *See* ECF No. 22.

sentenced to life in prison without the possibility of parole.[2]  Ex. 12 at 2430;

Ex. 1 at 82-89.

Petitioner appealed to the State First District Court of Appeal, Ex. 1 at

90, raising six claims of error.[3]  Ex. 13 at 1-51.  On June 22, 2011, the state

appellate court affirmed per curiam without opinion, and the mandate was

issued on July 8, 2011.  Ex. 16.  *See* Barnhill v. State, 64 So. 3d 120 (Fla.

1st DCA 2011) (table).

On September 19, 2012, Petitioner filed a pro se Petition for Writ of

Habeas Corpus pursuant to Florida Rule of Appellate Procedure 9.141, in

the state First District Court of Appeal alleging ineffective assistance of

appellate counsel.  Ex. 17.  He alleged that appellate counsel rendered

ineffective assistance by failing to argue fundamental error in giving an

improper "circular" jury instruction that negated his theory of self-defense.

Ex. 17 at 3-6.  He also alleged that appellate counsel rendered ineffective

---

[2] The sentence also included a 25-year minimum mandatory under section 775.087(2), Florida Statutes for the use of the firearm, and miscellaneous fees and fines.

[3] The claims raised on direct appeal were (1) fundamental error in jury instruction on justifiable use of deadly force; (2) fundamental error in failing to instruct on "Stand Your Ground" immunity; (3) fundamental error in instruction on justifiable and excusable homicide and whether instruction imposed a burden on Petitioner to prove justifiable and excusable homicide; (4) trial court error in denial of request for jury instruction on use of deadly force in dwelling, residence, or curtilage; (5) trial court error in admission of evidence of Petitioner's threats to kill persons other than victim; and (6) trial court error in excluding evidence that Petitioner's grandmother (victim's mother) ordered victim to leave the premises before the shooting.  Ex. 13.

assistance by failing to raise as fundamental error the giving of the "aggressor" portion of the justifiable use of force jury instruction. Ex. 17 at 9. The district court of appeal denied the petition on the merits on October 8, 2012. Ex. 17 at 16. On November 19, 2012, Petitioner's motion for rehearing was denied. Ex. 17 at 21. *See* <u>Barnhill v. State</u>, 100 So. 3d 137 (Fla. 1st DCA 2012) (mem).

On November 13, 2012, Petitioner filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), alleging that the trial court failed to award jail credit for all the time served. Ex. 18 at 12-14. The trial court denied the motion, noting that Petitioner was awarded all the credit for time served that he was due. Ex. 18 at 19-30. Petitioner appealed, and the First District Court of Appeal affirmed on April 1, 2013. Ex. 18 at 34. The mandate was issued on April 29, 2013. Ex. 18 at 36. *See* <u>Barnhill v. State</u>, 110 So. 3d 443 (Fla. 1st DCA 2013) (table).

Petitioner filed several motions for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 beginning on March 1, 2013.[4]

---

[4] The first Rule 3.850 motion was stricken without prejudice on May 9, 2013. Ex. 19 (ECF No. 22-19 at 150-51). An amended motion was filed on September 16, 2013. Ex. 19 (ECF No. 22-19 at 159). The amended motion was stricken on September 20, 2013, without prejudice to file a second amended motion. Ex. 19 (ECF No. 21-19 at 204-05). Petitioner was granted additional time to file the second amended motion. Ex. 19 (ECF No. 22-19 at 215-16). A [second] amended motion was filed on March 17, 2014. Ex. 9 (ECF No. 22-19 at 222). The second amended Rule 3.850 motion was dismissed on May 7, 2014, with leave to amend. Ex. 21 (ECF No. 22-21 at 432).

Ex. 19.  Petitioner filed his Third Amended Motion for Post-Conviction Relief on July 7, 2014.  Ex. 21 (ECF No. 22-21 at 434-83).  In it, he raised five claims, some with subparts, and a cumulative error claim.

An evidentiary hearing was held on December 17-18, 2015, on Petitioner's claims that his trial counsel rendered ineffective assistance for (1) failing to call his grandmother, Mary Barnhill, and Paul Kelly to testify; (2) advising Petitioner to omit testimony that the victim had knocked him to the ground before the shooting and that he was on the ground when he fired the gun, and failing to call a shooting reconstruction expert and mental health expert to testify; (3) opening the door to investigator Harnett's opinion that Petitioner was guilty; (4) waiving closing argument; (5) failing to file a motion to dismiss based on statutory immunity under section 776.032, Florida Statutes, for not moving for a judgment of acquittal that evidence did not contradict a reasonable hypothesis of self-defense, and for not moving for a new trial; and (6) cumulative error.  Ex. 24 (ECF No. 390-628). Testifying were Petitioner, Debra Camron, defense counsel John Jarvis, III, and defense counsel Jerry Allred.

On February 19, 2016, the post-conviction court entered an order denying the third amended Rule 3.850 motion, concluding that grounds one through four should be dismissed with prejudice and grounds five and six

be denied.  Ex. 24 (ECF No. 22-24 at 629-42).  Petitioner moved for rehearing, Ex. 24 (ECF No. 22-24 at 742), which was denied by order issued April 6, 2016.  Ex. 24 (ECF No. 22-24 at 750).  Petitioner appealed to the State district court of appeal on May 5, 2016.[5]  Ex. 24 (ECF No. 22-24 at 754).  On September 1, 2017, the district court affirmed per curiam without opinion, and Petitioner's motion for rehearing and to issue a written opinion was denied on September 18, 2017.  The mandate was issued on November 2, 2017.  Ex. 28.   *See* Barnhill v. State, 233 So. 3d 1039 (Fla. 1st DCA 2017) (table).

On September 15, 2017, Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following grounds for relief:

> (1) ineffective assistance (IAC) of trial counsel in waiving closing argument;
>
> (2) IAC in trial counsel opening the door to prejudicial opinion testimony from the lead investigator;
>
> (3) IAC in trial counsel's failing to move for a judgment of acquittal based on "Stand Your Ground" and justifiable use of force law;
>
> (4) district court of appeal affirmance on direct appeal of each of the claims of error was contrary to or an unreasonable

---

[5] The claims raised in the post-conviction appeal were trial court error in denying ineffective assistance claim for counsel (1) waiving closing argument; (2) opening the door to the admission of prejudicial opinion; and (3) failing to move for judgment of acquittal based on "Stand Your Ground" and justifiable use of deadly force laws. Ex. 25.

application of law as determined by the United States Supreme
Court or unreasonable determination of the facts in light of
evidence;

(5) IAC of appellate counsel on all grounds set forth in Petition
for Writ of Habeas Corpus.[6]

ECF No. 1.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light of
>> the evidence presented in the State court
>> proceeding.

---

[6] In grounds 4 and 5, Petitioner generally challenges the ruling of the First District
Court of Appeal without reiterating the grounds raised in those proceedings and without
specifying in what way the rulings were contrary to any federal law or an unreasonable
determination of the facts.

28 U.S.C. § 2254(d).  *See also* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011).  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . .  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. <u>Jackson v. Virginia</u>, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

> state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly

deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.' "  Pinholster, 563

U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner,

the prisoner must exhaust his remedies in state court."  O'Sullivan v.

Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner

must have apprised the state court of the federal constitutional claim, not

just the underlying facts of the claim or a "somewhat similar state-law

claim."  Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting

Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be

exhausted, "the petitioner must have given the state courts a 'meaningful

opportunity' to address his federal claim."  Preston v. Sec'y, Fla. Dep't of

Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416

F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim

in each appropriate state court in order to alert the state courts to the

federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995);

Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999).  The State must have been provided the

" 'opportunity to pass upon and correct' alleged violations of its prisoners'

federal rights."  Henry, 513 U.S. at 365) (quoting Picard, 404 U.S. at 275

(citation omitted)).  "This rule of comity reduces friction between the state

and federal court systems by avoiding the 'unseem[liness]' of a federal

district court's overturning a state court conviction without the state courts

having had an opportunity to correct the constitutional violation in the first

instance."  O'Sullivan, 526 U.S. at 845; *see also* Picard, 404 U.S. at 275 ("If

the exhaustion doctrine is to prevent 'unnecessary conflict between courts

equally bound to guard and protect rights secured by the Constitution,' it is

not sufficient merely that the federal habeas applicant has been through the

state courts." (citation omitted)).

      In regard to claims of ineffectiveness of trial counsel, the Petitioner

must have presented those claims in state court " 'such that a reasonable

reader would understand each claim's particular legal basis and factual

foundation.' "  Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007)

(citing McNair, 416 F.3d at 1302).

      In order to obtain review where a claim is unexhausted and, thus,

procedurally defaulted, the Petitioner must show cause for the default and

prejudice resulting therefrom or a fundamental miscarriage of justice.

Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993). In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim). A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice. *See* Schlup v. Delo, 513 U.S. 298, 327 (1995). This standard "thus ensures that petitioner's case is truly 'extraordinary.' " *Id.* (citing McCleskey, 499 U.S. at 494). Such a case is "extremely rare." Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1). However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

Further, under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983). "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir.

2011).  Credibility and demeanor of a witness are considered to be

questions of fact entitled to a presumption of correctness under the AEDPA

and the Petitioner has the burden to overcome the presumption by clear

and convincing evidence.  *Id.* at 845.

   For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct.  *See*

Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123.  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*  Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment.  Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs.  Strickland, 466 U.S. at 697.

## <u>Ground 1: Waiving Closing Argument</u>

Petitioner first contends that trial counsel rendered ineffective assistance in waiving closing argument.  ECF No. 1 at 6.  This claim was raised in Petitioner's third amended motion for post-conviction relief and denial of the claim was appealed to the State district court of appeal.  This claim was heard in the evidentiary hearing held in state court where Petitioner testified that trial counsel Allred informed him that no closing argument would be offered because the jury had "soured" on him and because Allred did not trust co-counsel to make the closing argument.  Ex. 24 (ECF No. 22-24 at 436 (transcript pagination at 47)).  When asked if he had discussions with trial counsel regarding the decision to waive closing argument, Petitioner testified:

> Yes, sir.  [the prosecutor] gave - - and this was a spontaneous thing they come up with.  He gave us - - we were allowed like, I think, two hours.  He gave 55 minutes of his closing.  Allred [defense counsel] told me this right here: He said he - - and he doesn't trust Jarvis [co-counsel] to close.  He said he didn't - - he didn't like the way that - - he said, Jarvis blew the jury selection.  He was still thinking about the jury and evidently the sourness of the jury.
> So he said what - - what we're going to do is we're going to rest our case.  And - - and I looked at him, I said, You know, you're not - - you're not going to rest the case, you know?  I said, What is this?  I said - - exactly like this: I said Is this some kind of like, Mississippi riverboat gambler move you're doing right here?  And he looked at me and he said - - he - - these were the words out of his mouth: He said, I don't gamble, like that.

> And we're going to - - he said that our - - basically, our option is to rest the case, and that's the answer to that question right there as far as, like, how that - - anything transpired around his - - him directing me about the closing, making that decision.  When absolutely blew any chance of educating the jury on Florida stand your ground law or any attribute of me acting in self-defense.  Everything went out the window right there.
>
> They were - - they're, like, basically, the last thing they heard out of the there out - - was [the prosecutor] talking about, And he - - and - - and the defendant stood over Mr. Barnhill and he shot him and he had time to think between every time he pulled the trigger.  You know, that was the last think in their mind is - - was hearing that he was laying on the ground and I - - just walked up there and shot him at - - at will.

Ex. 24 (ECF No. 22-24 at 436-38 (transcript pagination at 47-49)).

During cross-examination at the evidentiary hearing, Petitioner

testified that he agreed with counsel's decision "because he was the

counsel.  It's his decision" and because he trusted him.  Ex. 24 (ECF No.

22-24 at 491 (transcript pagination at 102)).  Petitioner also agreed that the

trial judge had questioned him about the decision to waive closing, and that

Petitioner had responded, "I'm in complete agreement.  We discussed it,

and I'm completely agreeing with what my attorneys' decision is."  Ex. 24

(ECF No. 22-24 at 492 (transcript pagination at 103)).  Petitioner also

agreed that the trial judge advised him that "[i]f you want them to make a

closing argument, they would have to" and that he responded, "I

understand that, sir, and they made me aware of that also.  So I am aware

of that." Ex. 24 (ECF No. 22-24 at 493 (transcript pagination at 104)).

Petitioner also agreed on cross-examination at the evidentiary hearing that

the trial judge asked him he was knowingly and voluntarily waiving closing

arguments, to which he answered, "Yes, sir." Ex. 24 (ECF No. 22-24 at

495-96 (transcript pagination 106-07)). Petitioner testified that when he

agreed to this strategy, he did not know he would be losing a constitutional

right. *Id.*

Trial counsel Allred testified that he did not recall a conversation

wherein he told Petitioner that Jarvis had blown the jury selection and that

no closing argument would be given because the jury was "soured" on him.

Ex. 24 (ECF No. 22-24 at 606 (transcript pagination at 217)). He testified

that he had instructed co-counsel Jarvis to prepare a closing argument in

the event they all decided it was necessary, and that Jarvis should deliver it

because Allred may have alienated the jury during his examination of

witness Mai Harnett. Ex. 24 (ECF No. 22-24 at 607 (transcript pagination

at 218)). Allred testified, "I asked John [co-counsel] to do it, and I wouldn't

ask John to do it if I thought he had blown jury selection." *Id.* He

explained, "So we were ready to do it if so, but it was a consensual,

unanimous agreement for us not to give it." Ex. 24 (ECF No. 22-24 at 607-

08 (transcript pagination at 218-19)).

Co-counsel Jarvis testified that he prepared to do the closing argument and had announced that he would be the one doing the closing. Ex. 24 (ECF No. 22-24 at 574 (transcript pagination at 185)).  He also testified that the decision was discussed and agreed to by both attorneys and Petitioner.  Ex. 24 (ECF No. 22-24 at 575-77 (transcript pagination at 186-88)).  He testified that the evidence had gone very well for the defense, including showing the violent nature of the victim who had a large wooden club in his hand after the shooting; and that both defense counsels had obtained not guilty verdicts in cases where they had waived closing. Ex. 24 (ECF No. 22-24 at 575, 578-79 (transcript pagination at 186, 189-90)).

Jarvis testified:

> We were also worried about what [the prosecutor's] closing was going to be . . . .  If it was vanilla and just hit some of the points, we were going to make a real decision then whether we wanted to waive or not because we were in fact about how worried . . . we would be if you got to do the rebuttal or be the last to discuss this, that you [the prosecutor] were going to really hit home on this case.  And we had seen you do that in previous cases, and we wanted to take the sting out.  And we felt very confident, based upon the evidence that had been presented, that we wanted to take - - if we waived closing that we were going to take a lot of bite out of your apple so to speak, and we discussed it.
>
> We felt confident in our decision, and then we immediately, upon coming back, discussed it with Mr. Barnhill and said, This is what we think we ought to do.  And I know Mr. Barnhill basically said, Jerry, this is your call.  I'm with you.  If y'all think this is the way we ought to go, then - - then we'll do it.

Ex. 24 (ECF No. 22-24 at 575-76 (transcript pagination at 186-97)).

Petitioner disputed that his attorneys ever mentioned the prosecutor's

argument.  Ex. 24 (ECF No. 22-24 at 491 (transcript pagination at 102)).

The post-conviction court denied the claim, concluding that the claim

was facially insufficient because Petitioner failed to allege "proper

prejudice" and that it should be dismissed because Petitioner had been

given multiple opportunities to amend.  Ex. 24 (ECF No. 22-24 at 638).

The post-conviction court went on to conclude that, "[a]ssuming arguendo

that this claim was facially sufficient, the Court would find that Defendant

has not demonstrated that trial counsel's performance was deficient."  *Id.*

The court noted that the trial judge conducted an extensive colloquy with

Petitioner concerning the waiver of closing argument and was satisfied with

Petitioner's responses that he was in complete agreement with the

decision.  *Id.*  The record shows that Petitioner assured the judge at trial

during the colloquy that he discussed the decision with his counsel and

agreed he was "fully appraised of this trial strategy."  Ex. 12 at 2372

(transcript pagination).  He also stated, "I'm in complete agreement.  We

discussed it and I'm completely agreeing with what my attorneys' decision

is."  Ex. 12 at 2373 (transcript pagination).

The Eleventh Circuit has held that closing argument is a critical stage of the trial.  Hunter v. Moore, 304 F.3d 1066, 1070 (11th Cir. 2002). However, counsel's waiver of closing argument has been held not to be presumptively ineffective assistance of counsel.  *See* Bell v. Cone, 535 U.S. 685, 695-96 (2002).  Counsel's performance in waiving closing argument is to be measured by the standards set forth in Strickland.  *Id.* The Supreme Court has explained:

> An attorney undoubtedly has a duty to consult with the client regarding "important decisions," including questions of overarching defense strategy.  Strickland, 466 U.S., at 688. That obligation, however, does not require counsel to obtain the defendant's consent to "every tactical decision." Taylor v. Illinois, 484 U.S. 400, 417-418 (1988) (an attorney has authority to manage most aspects of the defense without obtaining his client's approval).  But certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate.  A defendant, this Court affirmed, has "the ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." Jones v. Barnes, 463 U.S. 745, 751 (1983); Wainwright v. Sykes, 433 U.S. 72, 93, n.1 (1977) (Burger, C. J., concurring).  Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action.

Fla. v. Nixon, 543 U.S. 175, 187 (2004).  The record reflects, and Petitioner conceded as much at the evidentiary hearing, that trial counsel fully discussed with him their strategy and reasoning behind their

recommendation to waive closing argument and that he fully agreed to that strategy.

The post-conviction court also noted trial counsels' testimony at the evidentiary hearing explaining the basis for the strategic decision to waive closing.  *Id.*  The court stated, "Based on trial counsel's testimony, the Court would also find that the trial counsel made a reasonable tactical decision to waive closing argument."  Ex. 24 (ECF No. 22-24 at 639).  The post-conviction court expressly found the testimony of Allred and Jarvis "more credible than the testimony of Defendant."  Ex. 24 (ECF No. 22-24 at 632).  The state First District Court of Appeal affirmed denial of this claim. Ex. 28.

In light of the testimony presented at the evidentiary hearing concerning counsels' trial strategy and Petitioner's agreement to the strategy, and in light of the evidence at trial, which presented the jury with necessary information concerning the violent nature of the victim and Petitioner's explanation of his belief that he needed to use deadly force to defend himself, Petitioner has not shown that the post-conviction court's credibility determinations and conclusions were unreasonable.[7]

---

[7] Respondent contends that the claim is unexhausted because Petitioner made only a "conclusory argument regarding prejudice" in State court.  Ex. 22 at 26. However, in his State post-conviction claim, Petitioner alleged that because no closing

Under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983). "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011). Credibility and demeanor of a witness are considered to be questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence. *Id.* at 845.

Neither deficiency nor prejudice under the standards required by Strickland has been established. The state courts' adjudications have not been shown to be contrary to any federal law as determined by the Supreme Court or to be unreasonable in light of the record in this case. As noted earlier, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but

---

argument was given to summarize the evidence supporting the self-defense claim, the jury was not fully equipped to make a reasoned decision, and that but for counsel's alleged error, the outcome of the trial would have been different. ECF No. 22-21 at 472-73. Although not detailed, this allegation sufficiently alleged prejudice under the Strickland standard. Moreover, § 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies in the courts of the State.

whether that determination was unreasonable—a substantially higher threshold.' " Mirzayance, 556 U.S. at 123 (quoting Schriro, 550 U.S. at 473).  Ground 1 should be denied.

### Ground 2: Opening the Door to Prejudicial Opinion

Petitioner contends that trial counsel rendered ineffective assistance during cross-examination of Investigator Mia Harnett when he opened the door to the prosecutor's questions that elicited an opinion of Petitioner's guilt.  ECF No. 1 at 7-8; ECF No. 17 at 40-41.  He contends that if counsel had not opened the door, and Harnett had not been questioned on this topic, the result of the trial would have been different.  ECF No. 17 at 43.  The claim was raised in Petitioner's third amended Rule 3.850 motion, which the post-conviction court denied.  Ex. 24 (ECF No. 22-24 at 637).  The state district court of appeal affirmed denial of the claim.  Ex. 28.

Investigator Harnett, Sergeant with the Santa Rosa County Sheriff's Office, testified at trial that she was lead investigator into the shooting of Roy Barnhill, Sr., and responded to the scene on the afternoon of the shooting.  Ex. 10 at 969 (transcript pagination).  She made contact with Petitioner who was in the back of a patrol car at the residence.  She testified that he was read his Miranda rights.  *Id.* at 972.  She testified that Petitioner told her his father chased him down the driveway wielding a bat

and that Petitioner was defending himself. *Id.* at 974. She later questioned Petitioner at the Sheriff's office, where the interview was recorded on videotape. *Id.* at 984. She described speaking to other witnesses in her investigation of the shooting and about the search of the victim's home. *Id.* at 987-91. The search disclosed the death certificate of Petitioner's mother which indicated that she committed suicide, and the victim's will, which included a statement that no bequests were being left to Petitioner. *Id.* at 993. She identified a number of telephone records and calls on the day of the shooting and a firearms purchase record in Petitioner's name. *Id.* at 1009-10. Harnett also testified to various banking records that indicated joint accounts and certificates of deposit for Mary Barnhill, the victim's mother, and the victim, as well as other accounts held by the victim. She also identified bank records showing accounts and certificates of deposit held by Mary Barnhill, with various other relatives either on the account or as beneficiaries, including Petitioner as beneficiary. Ex. 11 at 1072-95 (transcript pagination).

During Investigator Harnett's testimony, the video was played for the jury in which she interviewed Petitioner shortly after the shooting. Ex. 11 at 1112-16. In it, he said he had stayed at his grandmother's house overnight and was leaving with his backpack, which had a pistol in it, when he saw

his father's truck and his father coming out with a stick "cocked back,"
saying he was "fixing to beat my damn brains out with it."  *Id.* at 1114.
Petitioner said on the video that he told his father he did not want any
problems with him, and Petitioner started backing away but his father "just
kept coming." *Id.* at 1114-15.  He said his father was cussing and
Petitioner was scared and "had to neutralize him."  *Id.* at 1115.  On the
video, Petitioner told Harnett that he had to eliminate the threat and just
started shooting, but did not know how many times he shot.  He said that at
the time his grandmother was in the house.  *Id.*

During the cross-examination of Investigator Harnett by defense
counsel, counsel pointed out that Harnett had referred to the deceased as
a victim, and asked, "isn't it a fact that Roy Barnhill [Sr.] is not a victim
unless this jury decides - - " Ex. 11 at 1163.  The prosecutor's objection
was sustained on the grounds the question was argumentative.  Defense
counsel then asked, "Do you have a dog in the fight in this case?"  Ex. 11
at 1164.  Harnett responded, "Are you asking me what I believe?", to which
defense counsel answered, "Yes.  Do you have a dog in the fight here?"
*Id.*  The prosecutor objected that the question was vague, but the judge
overruled the prosecutor's objection, stating that the question is proper if it
goes to whether there was bias.  *Id.*  Defense counsel then asked if

Investigator Harnett had bias or an interest in the outcome of the case. *Id.*

She testified first that she did have an interest in the outcome of the case,

but revised her answer to say she did not have an interest in the outcome,

but did have an interest "in seeing this case prosecuted successfully."

Ex. 11 at 1164-65. When asked if she wanted to see a conviction, she

testified, "Yes, sir. I do." *Id.* The following questions and answers then

occurred:

> Q. Okay. And in the beginning of the investigation did you have an open mind, as far was whether this was self-defense or whether it was a homicide? Did you have an open mind? Were you open to the possibility, or likelihood, or belief that it was self-defense?
>
> A. Yes, sir.
>
> Q. Okay. And did you maintain that attitude and that open-mindedness throughout the investigation"
>
> A. Until the evidence proved otherwise, yes, sir.
>
> Q. In your mind, right? Proved in your mind otherwise - - not to a jury, correct?
>
> A. Yes, sir.

Ex. 11 at 1165-66. Defense counsel then followed up with questions about

whether in the course of her investigation, she learned that the deceased

had a violent nature. He also asked if she discovered the autopsy report

and other and records concerning Petitioner's mother's death and whether

she reviewed them with an open mind to the issue of whether her death

was not a suicide but a homicide. Harnett testified she reviewed the

records, knew that the facts surrounding his mother's death troubled

Petitioner, but said nothing struck her as odd or curious about the death,

except the location of some pills.  Ex. 11 at 1166-73.  She also testified on

cross-examination that in her investigation she reviewed and considered

some reports of domestic violence committed by the deceased on his wife

prior to her death.  Ex. 11 at 1215.  During one of the many disputes

between counsel over this witness's testimony, the trial judge commented

outside the hearing of the jury, "I think we explored the bias nature, and I

think she admitted that she was biased based on her investigation."  Ex. 11

at 1259.

Petitioner contends here, as he did in the State post-conviction court,

that the line of questions by defense counsel attempting to show Harnett's

bias or lack of an open mind to the possibility of self-defense during the

investigation opened the door to the prosecutor on redirect to further elicit

opinion testimony from Harnett that was prejudicial to Petitioner.  Just prior

to redirect examination of Harnett, the prosecutor stated to the trial court

that defense counsel's questions "basically enlisted my lead investigator's

opinion that [his] client was guilty."  Ex. 11 at 1502.  The following colloquy

occurred:

> MR. ALLRED [defense counsel]:  Well, Judge, I think the thrust
> of what I was asking her was questions to elicit whether or not

she had kept an open mind. And it was the specifics that I asked her were oriented towards self defense.

I elicited the best responses that I could from her, and she is the one that volunteered her opinion in this case, you know, as a whole.

I was asking her about the progress and the process of the investigation. Not the final result. I was asking her only about defense, self defense related matters.

Anything that she - - and the Court will recall that many of her responses were not responsive to the questions. And that is the way, if there was a door opened at all, it was a crack. And it was something volunteered by her. I did not elicit the things - -

THE COURT: I think that I recall at least at one point she said, "Do you want my opinion?" And you said, "Yeah, Go ahead." And I think it was opened pretty wide there.

MR. ALLRED: Oh, no. I said, I mean, I know that you have an opinion about this case and guilt and innocence. But I did not ask her to volunteer it.

THE COURT: Here's what I'll do - -

MR. ELMORE [prosecutor]: She didn't volunteer it; she asked if you wanted it.

THE COURT: Mr. Elmore. This is what I'll do. I'll allow him to explore it and let's just do it briefly. I don't want to make it a focus of the trial.

MR. JARVIS [defense counsel]: That's going to be a slippery slope.

MR. ALLRED: This is really prejudicial. It's extremely - - I mean, if you're talking about a report - -

THE COURT: Here's what we'll do. You are going to say, "Did you consider." There were questions about what you considered in your report. And you kept an open mind and such. "Did you consider other reports?"

"Yes."

"What other reports?"

You can get into it briefly, and let's not hammer on it though.  And then you can argue it later.

MR. ALLRED:  Over my objection.

THE COURT:  I understand.  And I'll note that.

Ex. 11 at 1503-05.  When the prosecutor questioned Investigator Harnett

on redirect, the following transpired:

Q  [prosecutor] . . . . So Mr. Allred asked you yesterday whether you were biased in this case, correct?

A  Yes, he did.

Q  And he asked you if had you a personal interest in the case.

A  He did.

Q  Let's talk about the word "personal".  Do you have a personal interest?

A  No, sir.

Q  Did you know anybody involved in this case before September 24, 2008?

A  No, sir.

Q  And you didn't know the deceased, Roy Barnhill, Senior?

A  No. I did not.

Q  And you didn't know Carlton Barnhill, the defendant?

A  No.

Q  And you did not know any of the family members?

A  No.

Q  And you did not live in the Wiley Penton - -

MR. JARVIS: Judge, he is suggesting the answers.

THE COURT: Well, I think these don't suggest an answer so I'm going to overrule it. But when we get to the area - -

MR. ELMORE: I understand, I am trying to move along.

THE COURT: I understand. That's why I overruled it.

Q (BY MR. ELMORE)  You didn't not know anybody associated with the case other than the other law enforcement officers, correct?

A  Yes.

Q  Now, but you expressed that you do have an interest in the outcome of the case?

A  I do.

Q  What is that interest?

A  As in any other criminal case that I work, when I feel that the facts and the circumstances indicate that the defendant or the suspect committed a crime, I want to see justice done.

MR. ALLRED:  I would object. She is testifying as to the ultimate fact of the case.

THE COURT:  Well, I think that it was brought up by the questioning there.  So to the extent, ladies and gentlemen, you are the finder of fact, and I told you that.  No one else. That is your job.  So her opinion is what it is, and I'll allow it and you can continue.

Q (BY MR. ELMORE)  Well, Judge, I'm just going to ask her to repeat the answer that was interrupted.

Q (BY MR. ELMORE)  Go ahead.

A.  As in any other criminal case that I've worked in my time at the sheriff's office, that when I feel that the evidence and the circumstances prove that the suspect committed a crime, I want to see justice.

Ex. 11 at 1519-21.  Petitioner contends that his trial counsel opened the

door to this questioning, which erroneously elicited Investigator Harnett's

opinion, albeit somewhat indirectly, that she believed the evidence showed

Petitioner was guilty.

Petitioner raised this ineffective assistance of counsel claim in his third amended Rule 3.850 motion, which claim was heard at the evidentiary hearing.  Defense counsel Jarvis testified at the hearing that it was his and counsel Allred's trial strategy to elicit from Investigator Harnett testimony to show that she made her mind up early in the investigation that Petitioner was guilty of a crime and not acting in self-defense.  Ex. 24 (ECF No. 22-24 at 571 (transcript pagination 182)).  Jarvis testified that they wanted to "vigorously cross examine her" to show bias that she and the other deputies had in the case and that law enforcement was taking no other approaches in the case.  *Id.*

Defense counsel Allred testified at the hearing that his focus in questioning Investigator Harnett was on her having reached an opinion before she had done a complete and unbiased investigation.  He said that the questioning was "based on deposition information I got from her, and I thought that I would be able to successfully present that to the jury."  Ex. 24 (ECF No. 22-24 at 603 (transcript pagination at 214)).  He said the trial strategy was to aggressively attack her bias, but he did not anticipate that the trial court would let the prosecutor go into other reasons for the arrest, including her opinion.  Ex. 24 (ECF No. 22-24 at 604 (transcript pagination at 215)).  He explained that, by this, he meant he did not believe that

questioning her as to what she considered and the reasons for the arrest

would be characterized as opening the door to her opinion of guilt.  Ex. 24

(ECF No. 22-24 (transcript pagination at 230)).  He also testified that he

believed the prosecutor's redirect examination made it obvious to the jury

what her opinion was in the case, but a jury basically understands that the

arresting officer "had to have some reason" for arresting the defendant.

Ex. 24 (ECF No. 22-24 at 604-05 (transcript pagination at 215-16)).

The post-conviction court denied the claim, concluding, first, that it

was facially insufficient for failing to allege proper prejudice.  Ex. 24 (ECF

No. 22-24 at 637).  The court also concluded that even if the claim was

facially sufficient, Petitioner did not demonstrate that trial counsel's

performance was deficient.  The court cited defense counsel's explanation

that the questioning of Harnett was part of a trial strategy to show bias and

an unfair investigation.  The court also cited Allred's testimony that the

cross-examination of Harnett was helpful in that she admitted she had an

interest in the outcome of the case and an interest in seeing the case

prosecuted "successfully."  Ex. 24 (ECF No. 22-24 at 622-23 (transcript

pagination at 233-34)).  The post-conviction court concluded that defense

counsel made a reasonable tactical decision to elicit Harnett's testimony as

to what she considered in deciding to arrest Petitioner and whether she

was biased or kept an open mind.  Ex. 24 (ECF No. 22-24 at 637).  Denial of relief on this claim was appealed to the state First District Court of Appeal, which affirmed.  Ex. 28.

Counsel did not anticipate, and disagreed, that his vigorous cross-examination would open the door to the officer giving testimony suggesting she believed the evidence proved Petitioner guilty.  He had a reasonable strategic reason for attempting to show that there were reasons why Petitioner would be afraid of the victim and why the victim had reason to be angry with Petitioner based on financial dealings Petitioner had with his grandmother, who was the victim's mother.  The fact that the reasonable strategy resulted in a small portion of testimony that can be considered prejudicial to Petitioner does not render counsel's performance deficient. The Supreme Court has cautioned:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  *Cf.* Engle v. Isaac, 456 U.S. 107, 133-134 (1982).  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome
the presumption that, under the circumstances, the challenged
action "might be considered sound trial strategy."  See <u>Michel v.
Louisiana</u>, supra, 350 U.S., at 101.

<u>Strickland</u>, 466 U.S. at 689.  *See also* <u>Heath v. State</u>, 3 So. 3d 1017, 1029

(Fla. 2009) ("The fact that this defense strategy was ultimately

unsuccessful with the jury does not render counsel's performance

deficient."); *see also* <u>Henry v. State</u>, 948 So. 2d 609, 616 (Fla. 2006) ("It is

all too tempting for a defendant to second-guess counsel's assistance after

conviction or adverse sentence . . . .") (quoting <u>Strickland</u>, 466 U.S. at 689).

Petitioner is correct that generally, a witness's opinion as to the

credibility, guilt, or innocence of an accused is inadmissible as invading the

province of the jury.  *See* <u>Seibert v. State</u>, 923 So. 2d 460, 472 (Fla. 2006).

Further, "[p]olice officers, by virtue of their positions, rightfully bring with

their testimony an air of authority and legitimacy.  A jury is inclined to give

great weight to their opinions. . . ."  <u>Tumblin v. State</u>, 29 So. 3d 1093, 1101

(Fla. 2010) (quoting <u>Bowles v. State</u>, 381 So. 2d 326, 328 (Fla. 5th DCA

1980)); *see also* <u>Martinez v. State</u>, 761 So. 2d 1074, 1080 (Fla. 2000)

("[T]here is an increased danger of prejudice when the investigating officer

is allowed to express his or her opinion about the defendant's guilt.").

"Accordingly, it is especially troublesome when a jury is repeatedly exposed

to an interrogating officer's opinion regarding the guilt or innocence of the accused." Jackson v. State, 107 So. 3d 328, 340 (Fla. 2012).

However, the testimony given by Investigator Harnett did not expressly state an opinion as to Petitioner's guilt, but indicated that she kept an open mind until the evidence proved otherwise in her mind and that "when I feel that the facts and the circumstances indicate that the defendant or the suspect committed a crime, I want to see justice done." Her testimony did not appear to suggest to the jury that the officer had evidence of guilt not presented to the jury, as the Court warned against in United States v. Young, 470 U.S. 1, 18-19 (1985). To the extent that Investigator Harnett's comments can be interpreted as an opinion that Petitioner committed a crime in shooting the victim, it would not come as a surprise to the jury that law enforcement believed Petitioner should be charged and tried, since that is exactly what occurred.

Even if trial counsel should not have cross-examined Investigator Harnett in a manner that opened the door to cross-examination complained of by Petitioner, prejudice as required by Strickland has not been shown. Petitioner has not demonstrated that but for the alleged error of counsel, the result of the trial would have been different. The evidence of the medical examiner showed that the victim was shot three times in the back,

with exit wounds on the chest.  Ex. 11 at 1545 (transcript pagination).  The path of the bullets was upward from back to front.  *Id.* at 1547.  He also had bullet wounds on his arms.  *Id.* at 1629.  Evidence was also received concerning statements Petitioner made to Anthony Barnhill several months before the shooting in which Petitioner threatened to kill his father because Petitioner believed his mother had not committed suicide but had been killed by his father.  Ex. 10 at 556-58.  Several other witnesses testified to statements by Petitioner threatening to kill his father.  Ex. 10 at 703, 722.

The victim was found face down on the ground with his right arm extended forward touching a large stick.  Ex. 10 at 223-24 (transcript pagination).  The video of Petitioner's interview with officers indicated that the victim came toward him in a threatening manner with a stick and that he began firing his gun multiple times.  Ex. 11 at 1114.  Petitioner claimed self-defense, but the evidence was sufficient for the jury to find that the shooting was not done in self-defense.

In light of the evidence presented by the State, Petitioner failed to demonstrate a reasonable probability sufficient to undermine the Court's confidence in the outcome that, but for counsel's opening the door to the testimony of Investigator Barnhart suggesting the evidence showed him to be guilty, the result of the trial would have been different.  Nor has he

demonstrated that defense counsel rendered deficient representation.

Thus, the adjudication of the state courts has not been shown to be

contrary to or an unreasonable determination of federal law as determined

by the Supreme Court or an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding.  28 U.S.C.

§ 2254(d).  As noted earlier, "The question 'is not whether a federal court

believes the state court's determination' under the <u>Strickland</u> standard 'was

incorrect but whether that determination was unreasonable—a substantially

higher threshold.' " <u>Mirzayance</u>, 556 U.S. at 123.  "And, because the

<u>Strickland</u> standard is a general standard, a state court has even more

latitude to reasonably determine that a defendant has not satisfied that

standard."  *Id.*  Relief on Ground 2 should be denied.

## Ground 3: Judgment of Acquittal

In this ground, Petitioner contends that defense counsel rendered

ineffective assistance in failing to move for a judgment of acquittal based

on "Stand Your Ground" and justifiable use of force law.  ECF No. 1 at 9.

He argues that if such a motion had been made, it "would or should have

been granted, and the issue would have been preserved for appeal."  ECF

No. 17 at 44.  Petitioner contends that when the issue in the case is self-

defense, the State must prove beyond a reasonable doubt that the

defendant did not act in self-defense.  ECF No. 17 at 45 (citing <u>Williams v.</u> <u>State</u>, 2018 WL 1870518 (Fla. Apr. 19, 2018)).  However, where self-defense is at issue, "a judgment of acquittal should be denied where a jury would reasonably reject the defendant's explanation of self-defense." <u>Williams</u>, 2018 WL 1870518 at *2.  "[T]he jury is not required to accept the defendant's version of the facts and in fact 'must consider the probability or improbability of the defendant's credibility in light of the circumstances established by other evidence.' " *Id.* at *3.

Petitioner contends that defense counsel should have argued to the trial court that the State failed to satisfy its burden of proving that Petitioner was not acting in self-defense or that he had no right to stand his ground. ECF No. 17 at 45.  He points out evidence that when the shooting occurred, Petitioner was in a place where he had a right to be; he did not leave the scene immediately after the shooting; a call from his telephone to 411 was made from his cell phone near the time of the shooting, which he testified in the defense case was his misdialed attempt to call 911; and his threats to kill his father were years earlier.[8]  ECF No. 17 at 47-48.

---

[8] There was evidence that after the 411 call, Petitioner did not call 911.  Ex. 11 at 1364.  His grandmother and several neighbors did call 911.  Ex. 11 at 1364-73.

This claim was raised in the third amended Rule 3.850 motion and was heard at the evidentiary hearing.  Petitioner testified that he had no discussions with his counsel about Florida's "Stand Your Ground" law prior to or during trial.  Ex. 24 (ECF No. 22-24 at 439-40).  Defense counsel Allred testified at the hearing that he did not include a self-defense argument in his motion for judgment of acquittal because Petitioner had not yet testified and because the evidence in the State's case, including testimony that the victim was shot three times in the back, made it unlikely that a motion for judgment of acquittal on that ground would be granted. Ex. 24 (ECF No. 22-24 at 611-12).  Counsel testified that the self-defense jury instruction would cover their defense in the case and had more chance of success than the motion for judgment of acquittal on the grounds suggested by Petitioner.  Ex. 24 (ECF No. 22-24 at 610-11 (transcript pagination at 221-22)).  Counsel noted that the evidence to that point indicated that Petitioner was standing when he shot the victim, not that Petitioner had been knocked to the ground, a version of events not in the law enforcement video of Petitioner's interview or in Petitioner's testimony at trial—a version that did not come forth until the evidentiary hearing.  *Id.*

The post-conviction court denied the claim, finding trial counsel's performance was not deficient in this regard and that prejudice had not been shown. Ex. 24 (ECF No. 22-24 at 640). The court stated:

> If trial counsel had moved for a judgment of acquittal on those grounds, the Court would have denied the motion. At trial, the State presented competent, substantial evidence to support the charge of first-degree premeditated murder with a weapon. See §§ 782.04 & 775.087, Fla. Stat. (2008). This evidence includes, but is not limited to: Defendant's admission to law enforcement that he shot the victim with a gun, the medical examiner's testimony that the victim was fatally shot at least four times, including three times in the back,[9] and testimony from the Defendant's sister (Karla Stringfellow), brother-in-law (Richard Stringfellow), brother (Anthony Barnhill), and friend (Leona Jowers) that Defendant had threatened to kill the victim.
>
> At the evidentiary hearing, trial counsel testified that they did not move for a judgment of acquittal on those grounds because they did not believe such a motion would be successful. Based on trial counsel's testimony, as well as the evidence presented by the State at trial, the Court finds that trial counsel made a reasonable tactical decision to not move for a judgment of acquittal on those grounds.

Ex. 24 (ECF No. 22-24 at 640-41) (footnotes omitted). The State First District Court of Appeal affirmed denial of the claim. Ex. 25.

---

[9] The medical examiner testified, in part, that the victim had gunshot entrance wounds to his right mid-back, left-mid back and left lower back. Ex. 11 at 1544-45. The path of the bullet that entered the left mid-back was back to front, left to right, and upwards. Ex. 11 at 1558. The path of the bullet that entered the left lower back was back to front, left to right and upwards. Ex 11 at 1561. He had a bullet entrance wound and exit wound to the left wrist. Ex. 11 at 1564-66. The victim had no alcohol or illegal drugs in his system. Ex. 11 at 1578-79. Six shots were fired in total. Ex. 11 at 1226.

The post-conviction court was correct that even if defense counsel had moved for a judgment of acquittal on the basis of "Stand Your Ground" law or justifiable use of force, such a motion would not likely have been granted.  The evidence presented to that point showed that Petitioner had threatened to kill the victim and was vengeful against the victim as it pertained to the victim's treatment of Petitioner's mother and Petitioner's suspicions concerning his father's role in causing her death.  The evidence also showed the victim sustained three gunshot wounds to his back.  The State presented a prima facie case for first-degree murder, and Petitioner has not demonstrated a reasonable probability that a motion for judgment of acquittal on grounds of justifiable use of force or "Stand Your Ground" law would have been granted.

Petitioner also argues that the motion should have been made if only to preserve the issue for appeal.  Failure to preserve a claim for appellate review has been held not in and of itself to demonstrate prejudice, which is required under the second prong of Strickland's test for ineffective assistance of counsel.  *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) ("The Supreme Court in Strickland told us that when the claimed error of counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge prejudice against the outcome of the trial: whether there is

a reasonable probability of a different result at trial, not on appeal."). Thus,

Strickland requires the post-conviction movant show there is a "reasonable

probability that, absent the errors, the factfinder would have had

reasonable doubt respecting guilt." *See* Strickland, 466 U.S. at 695;

Purvis, 451 F.3d at 738. Petitioner cannot show that even if counsel had

argued "Stand Your Ground" or justifiable use of force as a ground for

judgment of acquittal in order to preserve it for appellate review, there is a

reasonable probability sufficient to undermine confidence in the verdict that

Petitioner would have had a different result at trial. Trial counsel is not

deficient for failing to make or preserve a meritless claim. Denson v.

United States, 804 F.3d 1339, 1342 (11th Cir. 2015).

Further, even if this issue had been preserved for appeal, no

reasonable probability has been shown—measured in terms of

undermining confidence in the outcome—that the appellate court would

have reversed and ordered Petitioner's discharge. Petitioner's failure to

meet his burden under 28 U.S.C. § 2254(d) dooms this ground to failure.

Ground 5 should be denied.

## Ground 4: Direct Appeal Claims of Error

Petitioner contends that the State district court of appeal's affirmance

on direct appeal of each of the claims of error was contrary to or an

unreasonable application of law as determined by the United States Supreme Court or unreasonable determination of the facts in light of evidence.  ECF No. 1 at 11.  However, he does not explain how the ruling on each of the claims of error raised on direct appeal was contrary to federal law or an unreasonable determination of the facts.  The Respondent correctly notes that Petitioner did not assert any federal claims in his direct appeal, arguing only fundamental error in application of state law, jury instruction, and admission of evidence.[10]  As noted earlier, Petitioner must "fairly present" his federal claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Henry, 513 U.S. at 365.

It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67; Carrizales v. Wainwright, 699 F.2d 1053, 1054-55 (11th Cir. 1983).  A claim grounded on issues of state law provides no basis for federal habeas relief because a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution.  Engle, 456 U.S. at 120-21; Branan, 861 F.2d at 1508.  This limitation on federal habeas review applies even if

---

[10] *See* note 3 *supra.*

a petition involving only state law issues is "couched" in terms of alleged constitutional violations.  *Id.* at 1508.

Whether jury instructions comported with state law on justifiable use of deadly force or the "Stand Your Ground" law in Florida, and whether the trial court abused its discretion in admission of evidence, are state law issues decided on the merits by the state appellate court.  Even if the determination of state law on each of the claims on direct appeal was erroneous, the Supreme Court has explained that the federal courts "have long recognized that 'a mere error of state law' is not a denial of due process."  Swarthout, 562 U.S. at 222 (quoting Engle, 456 U.S. at 121, n.21).  The state adjudication must be shown to violate the constitution, laws or treaties of the United States.  Estelle, 502 U.S. at 68.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle, 502 U.S. at 67-68.  Thus, to obtain federal habeas review, Petitioner must show a violation of a constitutional right. This showing has not been made.  State courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.  Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997).

For all these reasons, Petitioner has failed to demonstrate that the state court's adjudication of the claims raised in his direct appeal resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or was based on an unreasonable application of the facts in light of the evidence presented in the state court proceeding.  Ground 4 should be denied.

## Ground 5: Claims of Error By Appellate Counsel

In his last claim, Petitioner contends, similar to his claim in Ground 4, that the denial of his petition for writ of habeas corpus in the State appellate court alleging ineffective assistance of appellate counsel was contrary to or involved an unreasonable application of, clearly established federal law or was based on an unreasonable application of the facts in light of the evidence.  ECF No. 1 at 12.  In the petition, he alleged that appellate counsel rendered ineffective assistance, contrary to Strickland, by failing to argue fundamental error in the giving of an inapplicable jury instruction that negated his theory of self-defense.  Ex. 17 at 3-6.  He also alleged that appellate counsel rendered ineffective assistance by failing to raise as fundamental error the giving of the "aggressor" portion of the justifiable use of force jury instruction.  Ex. 17 at 9.  Again, Petitioner makes no argument in this court as to why the state court's denial on the merits was objectively unreasonable or even incorrect.  The State court's denial on the merits is

entitled to deference under § 2254.  Wright v. Sec'y, Dep't of Corr., 278

F.3d 1245, 1254 (11th Cir. 2002).  Even assuming Petitioner intends to rely

on the same grounds he set forth in his petition for writ of habeas corpus in

the State appellate court, he has not demonstrated that there was no

reasonable basis for the State court to deny his claims.

First, it must be remembered that "the Supreme Court's decision in

Strickland is the controlling legal authority to be applied in ineffective

assistance of counsel claims."  Sullivan v. DeLoach, 459 F.3d 1097, 1108

(11th Cir. 2006) (quotations omitted).  The requirements of Strickland also

apply to claims of ineffective assistance of appellate counsel.  *See*

Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) ("Claims of

ineffective assistance of appellate counsel are governed by the same

standards applied to trial counsel under Strickland.").  Under the

performance prong of Strickland, counsel's performance will be presumed

to be "within the wide range of reasonable professional assistance."

Strickland, 466 U.S. at 688-89.  In the context of a direct appeal, appellate

counsel does not have a duty to raise every non-frivolous issue, as an

effective attorney will winnow out the weaker arguments, even if they have

some merit.  Philmore, 575 F.3d at 1264.

Second, the case relied on by Petitioner in state court, <u>Martinez v. State</u>, 981 So. 2d 449 (Fla. 2008), is inapplicable to the charges for which Petitioner was tried.  <u>Martinez</u> involved the "Forcible Felony" instruction, which provides that a defendant may not avail himself of the defense of self-defense if he is engaged in attempting, committing, or escaping after the commission of a forcible felony.  *See* § 776.041(1), Fla. Stat. (1999). <u>Martinez</u> made clear that the forcible felony exception applies only in cases where the defendant is charged with a forcible felony independent of the felony for which he is claiming self-defense.  <u>Martinez</u>, 981 so. 2d at 454.

In the present case, Petitioner was not charged with an independent forcible felony in addition to premeditated first-degree murder.  The jury was instructed in pertinent part as follows:

> Jury instruction 3.6 (f) justifiable use of deadly force. Ladies and gentlemen of the jury, an issue in this case is whether the defendant acted in self-defense.  It is a defense to the offense with which Roy Carlton Barnhill, Junior, is charged if the death of Roy Carlton Barnhill, Senior, resulted from the justifiable use of deadly force.

> Deadly force means force likely to cause death or great bodily harm. The use of deadly force is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting, one, another's attempt to murder him, or two, any attempt to commit aggravated battery or aggravated assault upon him.

> . . . .

However, the use of deadly force is not justifiable if you find Roy Carlton Barnhill, Junior, initially provoked the use of force against himself unless, A, the force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger other than using deadly force on Roy Canton Barnhill, Senior;

B, in good faith the defendant withdrew from physical contact with Roy Carlton Barnhill, Senior, and clearly indicated to Roy Carlton Barnhill, Junior, that he wanted to withdraw and stop the use of deadly force, but Roy Carlton Barnhill, Senior, continued or resumed the use of force.

. . . .

Based upon appearances the defendant must have actually believed that the danger was real. If the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat, and had the right to stand his ground and meet force with force including deadly force if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony.

If you find that the defendant who because of threats or prior difficulties with Roy Carlton Barnhill, Senior, had reasonable grounds to believe that he was in danger of death or great bodily harm at the hands of Roy Carlton Barnhill, Senior, then the defendant had the right arm himself.

**However, the defendant cannot justify the use of deadly force if after arming himself he renewed his difficulty with Roy Carlton Barnhill, Senior, when he could have avoided the difficulty**, although, as previously explained, if the defendant was not engaged in an unlawful activity, and was attacked in any place where he had a right to be, he had no duty to retreat.

Ladies and gentlemen of the jury, in considering the issue of self-defense, you may take into account the relative physical abilities and capacities of the defendant and Roy Carlton Barnhill, Senior.

> If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether the defendant was justified in the use of deadly force, you should find the defendant not guilty.

Ex. 12 at 2390-94 (transcript pagination) (emphasis added).  It is the bolded portion that Petitioner contended constituted fundamental error that his appellate counsel should have raised on direct appeal and which Petitioner contends is similar to the "forcible felony" instruction found inapplicable in Martinez when no separate, independent forcible felony is charged.  The instructions given in Petitioner's case did not include the forcible felony instruction found objectionable in Martinez, and Petitioner provided the State appellate court with no case applying the holding in Martinez to the jury instructions given in Petitioner's case.  Appellate counsel is not deficient for failing to raise a meritless claim.  *See* Denson, 804 F.3d at 1342; Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008).

Third, Petitioner fails to demonstrate that but for appellate counsel's failure to make this fundamental error argument, he would have received a new trial.  To sustain a claim of fundamental error in Florida, the Florida Supreme Court has held that the defendant must show that the error reached down into the validity of the trial itself to the extent that the verdict of guilty could not have been obtained without the assistance of the error.

<u>State v. Spencer</u>, 216 So. 3d 481, 484-85 (Fla. 2017).  Under the evidence

in the case and the instructions given, the jury was provided a full and fair

opportunity to determine if Petitioner acted in self-defense under Florida

law or whether, as it concluded, he committed first-degree murder.  The

State court had reasonable grounds to conclude that Petitioner' claim of

ineffectiveness of appellate counsel in failing to allege fundamental error

was without merit.

Petitioner also contended in his state petition for writ of habeas

corpus that his appellate counsel rendered ineffective assistance for failing

to assert fundamental error in the giving of the instruction on use of deadly

force.  Ex. 17 at 9.  He argued in state court that there was no evidence to

support that portion of the instruction, which stated:

> However, the use of deadly force is not justifiable if you
> find Roy Carlton Barnhill, Junior, initially provoked the use of
> force against himself unless, A, the force asserted toward the
> defendant was so great that he reasonably believed that he
> was in imminent danger of death or great bodily harm and had
> exhausted every reasonable means to escape the danger other
> than using deadly force on Roy Canton Barnhill, Senior;
>
> B, in good faith the defendant withdrew from physical
> contact with Roy Carlton Barnhill, Senior, and clearly indicated
> to Roy Carlton Barnhill, Junior, that he wanted to withdraw and
> stop the use of deadly force, but Roy Carlton Barnhill, Senior,
> continued or resumed the use of force.

Ex. 12 at 2391-92 (transcript pagination).  He argued that there was no

evidence in the record that Petitioner initially provoked the use of force

against himself.  He further argued that the prosecutor's closing argument

contained suggestions that Petitioner could have provoked the

confrontation.  The prosecutor stated:

> If you find as the evidence shows that Carlton Barnhill
> went out there and provoked this incident, instead of staying
> behind a locked - - you know, if he was so terrified, why didn't
> he stand behind a locked door?  No, no, because he was not
> terrified, because he was vengeful, because he was angry,
> because he was murderous, that's why he went out there, to
> cause the trouble, to provoke the trouble, so if he does provoke
> it, then he cannot claim self-defense and it's not justifiable until
> he has exhausted every reasonable means to escape the
> danger.
> . . . Well it wasn't that way.

Ex. 12 at 2362 (transcript pagination).  The jury heard the evidence and

could decide whether to believe Petitioner's version of events or the version

of events reflected by evidence that Petitioner was angry with his father,

had in the past threatened to kill his father, and that his father was shot

multiple times in the back.

Petitioner argued to the State court in his petition alleging ineffective

assistance of appellate counsel that "[b]ecause the state was relying [in

argument] on this instruction it cannot be said it did not contribute to the

jury's verdict as it is the only instruction that advises the jury to reject

Petitioner's claim of self-defense if they found [as the state was arguing] that he initially provoked the confrontation." Ex. 17 at 12. However, to establish fundamental error, the claimant must show that the verdict could not have been obtained without the error. <u>Spencer</u>, 216 So. 3d 484-85. Even if the instruction and subsequent prosecutorial comment was error and could have <u>contributed</u> to the verdict, it was not shown to meet the stringent requirements of Florida law for establishing fundamental error. Thus, the State court had reasonable grounds on which to find the claim of that appellate counsel was ineffective for not arguing fundamental error in jury instruction lacked merit—including that the evidence was sufficient to justify the jury instruction complained of by Petitioner.

Petitioner has failed to show entitlement to habeas relief under § 2254 and Ground 5 should be denied.

## **Conclusion**

Based on the foregoing, Petitioner Roy C. Barnhill is not entitled to federal habeas relief. Accordingly, the § 2254 petition (ECF No.1) should be denied.

## **Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No.1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 15, 2018.

> **s/ Charles A. Stampelos**
> **CHARLES A. STAMPELOS**
> **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**